IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANCES W. CHAMBLISS and<br>VINCENT D. CHAMBLISS | § §<br>§<br>§ | PLAINTIFFS |
| v. | §<br>§ | Civil No. 1:14CV36-HSO-RHW |
| | §<br>§ | |
| WAL-MART STORES, INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO STRIKE AFFIDAVIT OF FRANCES CHAMBLISS AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary Judgment [38] and a Motion to Strike Affidavit of Frances Chambliss [50] filed by Defendant Wal-Mart Stores, Inc. These Motions are now fully briefed. After due consideration of the record, the submissions on file, and relevant legal authorities, the Court finds that both Motions [38], [50] should be denied.

I.  BACKGROUND

A.  Factual Background

Plaintiff Frances W. Chambliss ("Ms. Chambliss" or "Plaintiff") claims that she slipped and fell on or about July 2, 2010, at Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") retail store located in Pascagoula, Mississippi. Compl. [1-1] at 5. Ms. Chambliss was shopping at Wal-Mart with her then sister-in-law Antoinette Chambliss ("Antoinette") when the incident occurred. Ms. Chambliss alleges that she slipped on liquid on the floor of the women's restroom. *Id.* According to

-1-

Plaintiff's deposition testimony, after she went inside the women's restroom,

> I used the restroom. I started to the sink to wash my hands. And before I could get to the sink, I fell.
>
> And I recall the manager coming inside of the restroom. I recall the cleaning lady coming inside the restroom. Antoinette was inside the restroom. And I remember them helping me up off the floor. And I remember seeing a substance - - some type of substance. After they were helping me up off the floor there was a substance that was on the floor.
>
> * * *
>
> And I recall the manager talking to the cleaning lady, and I recall the manager asking the cleaning lady about why wasn't [sic] the wet floor signs out and she was fussing about that and she was talking about getting them out right there, get them out right now.

Dep. of Ms. Chambliss [39-1] at 29.

Surveillance video [43] from outside of the restroom has been produced by Wal-Mart and conventionally filed with the Court. The video begins at 5:04:54 p.m. and shows entrances to a women's restroom on the left side of the screen and to a men's restroom on the right side of the screen. Between the two restroom entrances are two water fountains. On the floor near the left water fountain is a single, orange caution cone (the "First Cone").

At 6:05:31 p.m., a female Wal-Mart employee appears on the video with a yellow cleaning cart (the "First Employee").[1] The First Employee positions the cleaning cart between the women's restroom entrance and the left water fountain and enters the women's restroom. The First Employee reenters and exits the women's restroom several times over the next ten minutes with various supplies as

---

[1]This is not the first Wal-Mart employee to appear on screen. However, only the employees relevant to this case will be identified in this Order.

she appears to clean the restroom.² At 6:15:28 p.m., the First Employee moves the First Cone that was near the left water fountain farther from the women's restroom, at a position which appears to be underneath, or directly in front of, the left water fountain. The First Employee then retrieves a mop from her cleaning cart and reenters the restroom at 6:15:51 p.m.

At 6:19:05 p.m., the First Employee places two orange caution cones (the "Second" and "Third" Cones) in the far left corner of the entrance hallway to the women's restroom. At 6:19:23 p.m., the employee retrieves one of these two cones and disappears down the hallway leading into the restroom area. The other orange cone (the "Second Cone") remains in the back, left corner of the entranceway. It is unclear from the video what happens to the cone (the "Third Cone") the First Employee carries down the hallway.

At 6:19:33 p.m., the First Employee reappears on the video, mopping in the entranceway to the women's restroom. The First Employee temporarily moves the Second Cone to mop and then replaces it in the corner when she finishes mopping. The First Employee finishes mopping at 6:20:01 p.m. and places the mop on her cleaning cart. At 6:20:35 p.m., the First Employee repositions her cleaning cart near the men's restroom entrance. The First and Second Cones remain in their respective positions, under the water fountain and in the corner of the entrance hallway to the women's restroom, until after Ms. Chambliss' alleged slip and fall. The Third Cone

---

²At 6:06:46 p.m., the First Employee retrieves what appears to be a spray bottle and immediately enters the women's restroom. It is unclear what substance is in the spray bottle.

never reappears on the video.

Plaintiff first enters the women's restroom at 6:30:06 p.m. Another female Wal-Mart employee (the "Second Employee") enters the restroom at 6:35:30 p.m. and exits at 6:38:42 p.m. Plaintiff exits the restroom a few seconds later and follows the Second Employee off camera to the right side of the video screen. At 6:41:55 p.m., the First Employee reenters the women's restroom. Plaintiff reappears on screen with Antoinette at 6:42:50 p.m. Antoinette is pushing a shopping cart. Plaintiff enters the women's restroom 6:42:57 p.m. Antoinette stands at the entrance of the restroom for about 10 seconds and then removes the bags from her cart and enters the restroom at 6:43:14 p.m. A third female Wal-Mart employee (the "Third Employee") enters the women's restroom at 6:44:51 p.m. At no time is the interior of the restroom visible on the surveillance video.

At 6:45:39 p.m. on the video, the Second Employee reappears on the video with what appears to be paperwork and approaches the women's restroom entrance. The Third Employee exits the restroom at 6:45:43 p.m., followed by the First Employee a few seconds later, and they immediately encounter the Second Employee. The First, Second, and Third Employees appear to talk briefly, as they walk away from the restroom. All three remain visible on the video.

Plaintiff and Antoinette exit the restroom at 6:45:48 p.m. and walk behind the three Wal-Mart employees. The First and Third Employees walk to the far right of the screen and appear to engage in a conversation, while Plaintiff and Antoinette remain with the Second Employee closer to the women's restroom while the Second

Employee reviews the paperwork she is holding. The First Employee reenters the restroom at 6:46:21 p.m. and picks up the Second Cone. The First Employee takes the Second Cone down the restroom entranceway hallway and disappears off screen towards the restroom. The First Employee exits the restroom at 6:46:39 p.m. without the Second Cone. Only the First Cone remains visible on the video. At 6:50:09 p.m., Plaintiff, Antoinette, and the First Employee walk together off screen. Plaintiff and Antoinette do not appear again on the video.

Wal-Mart employee Lia Beech took Plaintiff's customer statement. Customer Statement [46-2] at 3. It is unclear from the record which employee in the video, if any, was Lisa Beech. Plaintiff also testified that Wal-Mart took a report of the incident. Dep. of Ms. Chambliss [46-1] at 26. The Wal-Mart claim form which Plaintiffs have supplied reflects that the surface of the tile floor in the restroom was not clean nor was it dry, and that the slip and fall incident occurred at 6:40:00 p.m. Claim Form [46-2] at 1.[3] The claim form's description of the incident states "SPOT OF WATER THAT HAD B [sic]." *Id.*

B.   Procedural History

Plaintiffs Ms. Chambliss and her former husband, Vincent D. Chambliss ("Mr. Chambliss") (collectively, "Plaintiffs"), filed their Complaint [1-1] in the Circuit Court of Jackson County, Mississippi, on July 1, 2013, naming Wal-Mart as the sole Defendant. Wal-Mart removed the case to this Court on February 4, 2014, invoking jurisdiction based upon diversity of citizenship. Notice of Removal [1] at 1-2. Ms.

---

[3]The Claim Form asks in the "SLIP/FALL INFORMATION," "[w]as surface clean?" Claim Form [46-2] at 1. The inputted answer was "No." *Id.* "Was surface dry? No." *Id.*

Chambliss asserts a negligence claim against Wal-Mart, and her former spouse, Mr. Chambliss, asserts a loss of consortium claim.  Compl. [1-2] at 4-6.

Wal-Mart has moved for summary judgment on Plaintiffs' claims.  Mot. for Summ. J. [38] at 1-2.  In support of their Response [46], Plaintiffs rely upon the Affidavit of Frances Chambliss [46-6].  Wal-Mart moves to strike this Affidavit.  Mot. to Strike [50] at 11.

## II.  DISCUSSION

A.  Wal-Mart's Motion to Strike

Wal-Mart moves to strike the Affidavit of Ms. Chambliss [46-6] which Plaintiffs have offered in support of their Response to the Motion for Summary Judgment.  Wal-Mart objects to four specific portions of Ms. Chambliss' Affidavit, contained in paragraphs 4 through 8.  Mot. to Strike [50] at 2-3.  According to Wal-Mart, these "statements are conclusory, self-serving, and contradictory to Plaintiff's prior testimony in this case and, therefore, are due to be stricken and not considered by this Court for purposes of ruling on Wal-Mart's [M]otion [for Summary Judgment]."  *Id.* at 3.

Plaintiffs respond that Ms. Chambliss was deposed over four years after the incident and may have confused certain events, such as whether she entered the restroom on more than one occasion or whether her sister-in-law was with her the first time she entered the restroom.  Resp. to Mot. to Strike [51] at 3.  Plaintiffs argue that Ms. Chambliss' version of events contained in her Affidavit is not blatantly contradicted by the record and should not be stricken.  *Id.* at 4-8.

1. Legal Standard

The United States Court of Appeals for the Fifth Circuit has held that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. School Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.* (quoting *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

"Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (citations omitted). However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).

2. Analysis

At bottom, Defendant's Motion to Strike goes to the question of when Ms. Chambliss fell in the restroom. According to the surveillance video [43], Ms. Chambliss entered the restroom at Wal-Mart twice, entering once at 6:30:06 p.m., and exiting at 6:38:44 p.m., then entering a second time at 6:42:57 p.m. when she

and Antoinette approached the restroom. On this second occasion, Ms. Chambliss initially enters the restroom by herself. Antoinette enters at 6:43:14 p.m. Two Wal-Mart employees, the First and Third Employees, exit the restroom together at about 6:45:46 p.m., followed by Ms. Chambliss and Antoinette.

    a.    <u>Ms. Chambliss' Statement in Her Affidavit that "That video showed me entering the restroom at 6:43 p.m. on July 2, 2010. Antoinette did not come into the restroom until after I slipped on the wet floor of the restroom."</u>

Wal-Mart appears to take the position that while Ms. Chambliss maintains she fell during the second trip to the restroom at 6:43 p.m., "[t]he only conclusion that can be reached based on the actual objective video footage of the incident and Plaintiff's own testimony is that she fell upon entering the restroom for the first time at or before 6:30 p.m. . . . ." Mot. to Strike [50] at 4. Wal-Mart has not pointed to any portion of Ms. Chambliss' deposition testimony which definitively states that her fall occurred during the first of her two trips inside the restroom.[4]

Wal-Mart's counsel questioned Ms. Chambliss as follows:

Q.    At any point in time before you went to the restroom and you fell, did you go to the restroom?
A.    I'm not understanding.
Q.    Had you been to the restroom in that particular store prior to going to the restroom when you fell.
A.    Did I go there first is what you're saying?
Q.    Right.
A.    No. I didn't go to the restroom first.
Q.    You went immediately to shopping; is that right?
A.    Yeah, we were shopping.
Q.    When you decided to go to the restroom, did Antoinette go with you?

---

[4]The parties have only supplied excerpts of Ms. Chambliss' deposition rather than the entire transcript.

      A.     Yes, ma'am.
      Q.     Okay.
      A.     She didn't go with me.  She came behind me.

Dep. of Ms. Chambliss [46-1] at 30.  While this line of questioning inquires whether Ms. Chambliss' visit to the restroom when she fell was the first visit to the restroom that she made while in the store, Ms. Chambliss did not appear to understand the question.  Instead, Ms. Chambliss responded that she had not gone to the restroom when she first entered the store, but had shopped before she visited the restroom.  *See id.*  Ms. Chambliss did not differentiate between, or even acknowledge, the two separate trips to the restroom.  This is not directly contradictory to her Affidavit.

     Because the surveillance video's coverage is limited to the exterior of the restroom, it is not clear from the video whether Ms. Chambliss fell during her first or second visit to the restroom.  However, Ms. Chambliss' deposition testimony is consistent with the theory that Ms. Chambliss fell during the second restroom visit.  Ms. Chambliss testified that, after she fell, a Wal-Mart manager, a Wal-Mart cleaning lady,[5] and Antoinette were in the restroom, and that they helped her up off of the floor after her fall.  Dep. of Ms. Chambliss [39-1] at 29.  The video reflects that, during Ms. Chambliss' second visit, she, Antoinette, and two Wal-Mart employees were in the restroom, and all four exited at the same time.  Ms. Chambliss' deposition testimony is therefore not directly contradictory to her Affidavit on this point.  The Affidavit supplements Ms. Chambliss' prior testimony.  Wal-Mart's

---

     [5]The person Ms. Chambliss identifies as the "manager" appears from the video to be the Third Employee, while the person she identifies as the "cleaning lady" appears to be the First Employee.

request to strike Ms. Chambliss' statement about entering the restroom at 6:43 p.m. will be denied. *See S.W.S. Erectors, Inc.*, 72 F.3d at 496.

>    b.   <u>Ms. Chambliss' Statements in Her Affidavit that "Some women wearing clothing that indicated they worked for Wal-Mart were in the restroom while I was in there.  One of them may have been in the restroom upon my entrance into the restroom[;] I'm not sure how long that she had been in there before I entered."</u>

Wal-Mart argues that Ms. Chambliss testified that someone was in the restroom at the time she entered, but that Ms. Chambliss "could not identify that person in any manner." Mot. to Strike [50] at 6. According to Wal-Mart, Ms. Chambliss' statement that the two women in the restroom worked for Wal-Mart is conclusory and self-serving because she does not indicate what clothing the women were wearing or substantiate why such clothing means those women worked for Wal-Mart. *Id.* Wal-Mart again insists that the video footage objectively proves that Ms. Chambliss' fall occurred on her earlier visit, not when the two Wal-Mart employees were purportedly in the restroom. *Id.*

The Court has already rejected Wal-Mart's argument that the video definitively proves that Ms. Chambliss' fall occurred on her first visit. As far as who was in the restroom when Ms. Chambliss entered, she testified in relevant part as follows:

>    Q.   Do you recall whether anyone else was in the restroom when you entered?
>    A.   Yes.
>    Q.   Do you know if it was another customer or a Wal-Mart employee?
>    A.   No.
>    Q.   Do you remember anything about that person?
>    A.   No, not that I can recall.

Dep. of Ms. Chambliss [50-1] at 32.  Ms. Chambliss testified that Antoinette "came behind [her]" into the restroom.  Dep. of Ms. Chambliss [46-1] at 30.  Ms. Chambliss further stated that she saw someone she identified as a Wal-Mart manager and "cleaning lady" in the restroom after she fell.  Dep. of Ms. Chambliss [39-1] at 42-43; Dep. of Ms. Chambliss [46-1] at 48-49.  From the video, these appear to be the individuals previously referred to as the Third and First Employees.

Ms. Chambliss' statement in her Affidavit that "[s]ome women wearing clothing that indicated they worked for Wal-mart [sic] were in the restroom while I was in there" is not necessarily inconsistent with her deposition testimony.  Nor is Ms. Chambliss' statement that "[o]ne of them may have been in the restroom upon my entrance into the restroom[;] I'm not sure how long she had been in there before I entered" clearly contrary to her earlier testimony.

Moreover, the surveillance video shows that, with respect to Ms. Chambliss' second visit to the restroom, the First Employee was present in the restroom before Ms. Chambliss entered, and the Third Employee entered the restroom before Ms. Chambliss exited.  The video reflects that the First Employee, who has been referred to in the record as the "cleaning lady," reentered the women's restroom at 6:41:55 p.m., followed by Plaintiff and Antoinette at 6:42:57 p.m.  The Third Employee enters the restroom at 6:44:51 p.m.  All four women exit the restroom within a few seconds of each other beginning at 6:45:43 p.m.  This video footage is consistent with Ms. Chambliss' deposition testimony and her Affidavit.

Based on the evidence before the Court, Ms. Chambliss' Affidavit merely

supplements her prior testimony on this point. Wal-Mart's request to strike the Affidavit on this basis will be denied.

  c. <u>Ms. Chambliss' Statement in Her Affidavit that "I have testified in my deposition that I fell on the restroom floor in a wet, liquid substance that felt greasy-like to me, but I didn't say I fell in grease on the floor."</u>

Wal-Mart argues that during her deposition, Ms. Chambliss "was given every opportunity not only to identify and describe the substance on the floor but to specifically state if she believed it was water and she did not." Mot. to Strike [50] at 7. "Instead when asked directly what it looked like Plaintiff stated 'grease, to me.'" *Id.* According to Wal-Mart, Ms. Chambliss' allegation in her Affidavit that she did not say she fell in grease on the floor "is nothing more than an effort on Plaintiff's part to create a question of fact as to whether the substance which caused Plaintiff's fall was water – in support of her argument that the presence of the water was attributable to Wal-Mart." *Id.*

Ms. Chambliss' assertions in her Affidavit regarding the substance which caused her to fall do not directly contradict her deposition testimony. While Ms. Chambliss testified in her deposition that the substance was a "greasy-like substance," Dep. of Ms. Chambliss [39-1] at 40, she also stated that the substance was clear, *id.* at 41, "like grease mixed with water or something," *id.* at 42. As the Court appreciates her testimony, Ms. Chambliss never claimed that she slipped on grease alone. Ms. Chambliss' Affidavit appears to supplement, rather than contradict, her prior testimony. Wal-Mart's request to strike this portion of Ms. Chambliss' Affidavit will be denied.

>   d.   Ms. Chambliss' Statement in Her Affidavit that "I heard Wal-Mart employees inquire about 'wet floor' signs and about why there were none in the restroom area that encompassed the stalls and sinks."

Wal-Mart maintains that during her deposition, Ms. Chambliss "was given every opportunity to describe the details of the conversation which she overheard between a manager and cleaning lady and at no point in time did she state that there was an issue with no caution cones being placed in the area which encompassed the stalls and the sinks." Mot. to Strike [50] at 10. Wal-Mart also argues that this portion of Ms. Chambliss' Affidavit contradicts her deposition testimony that she walked past two caution cones when she entered the restroom. *Id.*

Ms. Chambliss testified during her deposition that she saw two caution cones as she entered the restroom. Dep. of Ms. Chambliss [39-1] at 33. One was at the water fountain. *Id.* The other was "at the first part of the entrance that was over in the corner" at the beginning of the walkway which led into the restroom. *Id.* at 33-34. Based on those floor signs, Ms. Chambliss "just assumed that it was wet at the entrance when [she] walked in." *Id.* at 35. Ms. Chambliss testified that in the area where she fell, near the restroom sinks, she could not see the caution cones because there was a wall between the sinks in the restroom and the caution cones. *Id.* at 39. Wal-Mart's counsel then questioned Ms. Chambliss regarding Wal-Mart's knowledge of the condition of the floor as follows:

>   Q.   Do you have any idea if Wal-Mart was aware of it before your fall?
>   A.   Well, I recall the manager asking the lady - - when she asked the lady who was cleaning the restroom when she asked her why didn't she put - - why didn't she put wet floor signs out or something, she

>   said something about a, um, child had been playing earlier, even before I came in the bathroom.
>   She said something about somebody was playing with something. But I know that that - - that – that they was [sic] discussing that. I really wasn't in there, but I recall her saying, well, you should have put a wet floor sign out and go get them go get the wet floor signs. I remember - - I recall that.
>
>                       * * *
>
> Q.  Okay. When did the cleaning lady arrive?
> A.  I can't recall, but I know she was there when I, um, got up. I think when I got up off the floor she was there.
> Q.  And how was it that you knew she was a cleaning lady?
> A.  Because the manager turned to her and said, look at this substance, look at this on the floor, why did you - - why didn't you clean it up, and she said - - and she said why if you had it on the floor or something she said to the effect, she said, why didn't you put the wet floor signs out. She said - - the, um, cleaning lady said something about she had mopped the floor or something to the manager. The manager then said why didn't you put the signs out here by this, um, in the area of the sink. She was, um - - they was [sic] having a discussion. That's how I knew that it was the cleaning lady.
> Q.  Okay.
> A.  And the manager just kept on stressing the fact, Go get the wet floor signs. That's how I knew that it was the cleaning lady.
> Q.  And this conversation took place while you were still inside the restroom?
> A.  We was [sic] inside.

Dep. of Ms. Chambliss [50-1] at 42-43, 48-49.

The Court has thoroughly reviewed Ms. Chambliss' deposition testimony and Affidavit. While the wording is slightly different, the substance of Ms. Chambliss' statement in her Affidavit regarding the Wal-Mart employees' conversation is quite similar to her deposition testimony on the subject. Ms. Chambliss' Affidavit appears to supplement the testimony she gave during her deposition. The Court cannot say that this portion of Ms. Chambliss' Affidavit should be stricken as Wal-Mart requests. *See S.W.S. Erectors, Inc.*, 72 F.3d at 496.

-14-

In sum, based upon the substance of Ms. Chambliss' Affidavit and her deposition testimony, the Court cannot conclude that her Affidavit directly contradicts her prior deposition testimony. Instead, the Affidavit appears to supplement Ms. Chambliss' recollection of events. The Court will therefore deny Wal-Mart's Motion to Strike Ms. Chambliss' Affidavit.[6]

B.  <u>Wal-Mart's Motion for Summary Judgment</u>

1.  <u>Summary Judgment Standard</u>

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is

---

[6]Even if the Court granted Wal-Mart's Motion to Strike, genuine questions of material fact exist in the record which preclude summary judgment even in the absence of the Affidavit.

appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

    2.    <u>Mississippi Premises Liability Law</u>

Because this is a case arising under diversity jurisdiction, the Court must apply Mississippi substantive law. *Cox v. Wal-Mart Stores East, L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Premises liability analysis under Mississippi law requires three determinations: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." *Cox*, 755 F.3d at 233 (quoting *Wood v. RIH Acquisitions MS II, LLC,* 556 F.3d 274, 275 (5th Cir. 2009)). The parties appear to agree, and it appears beyond dispute based upon the record, that Ms. Chambliss' legal status at the time of her fall was that of a business invitee.[7] "While a premises owner is not an insurer of the safety of invitees, the premises owner does

---

[7]"An invitee is a person who enters the property of another in response to an express or implied invitation of the owner or occupant for the mutual advantage or benefit of the parties involved." *Banks v. Brinker Miss., Inc.*, 146 So. 3d 388, 391 (Miss. Ct. App. 2014) (quoting *Daulton v. Miller*, 815 So. 2d 1237, 1239 (Miss. Ct. App. 2001)). The Mississippi Supreme Court "has recognized two classes of invitees: public invitees and business invitees." *Id.* at 391 n.2 (citing *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 763 (Miss. 1989)). A business invitee "is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* (citing *Clark*, 538 So. 2d at 763). Where the facts are not in dispute, the classification of a plaintiff's status is a question of law for the trial judge. *Id.* at 391 (citing *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004)).

-16-

have a duty of reasonable care, to maintain its premises in a reasonably safe condition." *Id.* (quoting *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (Miss. 2008)).

> A landowner's duty to invitees includes a "duty to keep its premises in a reasonably safe condition," and a duty to "warn of any dangerous conditions not readily apparent [of] which the owner knew, or should have known, in the exercise of reasonable care and the duty to conduct reasonable inspections to discover dangerous conditions existing on the premises." The breach of either duty supports a claim of negligence.

*Id.* (quoting *Pigg*, 991 So. 2d at 1199-1200).

"Mere proof 'of the occurrence of a fall on a floor within [the] business premises is insufficient to show negligence on the part of the proprietor.'" *Bonner v. Imperial Palace of Mississippi, LLC*, 117 So. 3d 678, 682 (Miss. Ct. App. 2013) (quoting *Stanley v. Boyd Tunica, Inc.*, 29 So. 3d 95, 97 (Miss. Ct. App. 2010)). The Mississippi Court of Appeals has explained that

> [i]n order for a plaintiff to recover in a slip-and-fall case, he must (1) show that some negligent act of the defendant caused [his] injury; or, (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff; or, (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant, in that the defendant should have known of the dangerous condition.

*Id.* (quoting *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995)). "All three types of premises-liability claims require a showing of a dangerous condition . . . . [A] 'property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists.'" *Id.* (quoting *Stanley*, 29 So. 3d at 97-98).

    3.    <u>Analysis</u>

Wal-Mart first argues that it did not create the allegedly hazardous condition

or have actual notice of its existence.  Mem. in Supp. of its Mot. for Summ. J. [39] at 7.  According to Wal-Mart, there is no evidence Wal-Mart "was negligent, either by creating the alleged greasy condition or by having notice of its existence and failing to adequately warn or remedy the hazard."  *Id.* at 8.  Wal-Mart relies upon its policies regarding the cleaning of store floors which require maintenance associates to "use hot/warm water when mopping areas of the store, including the bathroom."  *Id.*  Wal-Mart maintains that "[t]he use of hot water does not create any residue or by product which would cause the floor to be greasy."  *Id.*

Wal-Mart next asserts that it properly warned Ms. Chambliss.  *Id.* at 8-9.  Wal-Mart maintains that Ms. Chambliss' own testimony reflects that she walked past two caution cones entering the restroom and that these warnings were adequate to meet the duty it owed to Ms. Chambliss.  *Id.* at 9-10.  Finally, Wal-Mart contends that it did not have constructive knowledge of the "greasy" substance on the floor because Plaintiffs have not presented any evidence tending to show how long the alleged substance had been on the floor or that Wal-Mart should have discovered the condition prior to Ms. Chambliss' fall.  *Id.* at 10.

Plaintiffs respond that "a negligent act of Wal-Mart caused them injuries and damages."  Mem. in Supp. of Resp. [47] at 4.  According to Plaintiffs, the maintenance associate named Rose, whom it appears would be the individual identified in the surveillance video as the First Employee, "put a liquid substance on the restroom floor by mopping the floor."  *Id.*  Plaintiffs maintain that, even if the First Employee used hot water, hot water can still mix with dirt and debris and

cause a dangerous condition. *Id.* at 7. Plaintiffs point out that Wal-Mart has not provided any affidavit or deposition testimony from the First Employee stating that she followed Wal-Mart's policy on the day of the incident or describing what was in the bottle that she took into the restroom while she was cleaning it. *Id.* Plaintiffs further argue that Wal-Mart failed to warn Ms. Chambliss of the dangerous condition it created by not placing caution cones in the restroom, instead only placing caution cones by the water fountain outside of the restroom and in a "secluded corner of the entry way" leading into the restroom. *Id.* at 8-10.

Having reviewed the record as a whole, the Court cannot say that Wal-Mart has carried its summary judgment burden of demonstrating that there is no genuine dispute as to any material fact or that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Reviewing the evidence in the light most favorable to Plaintiffs and crediting Ms. Chambliss' testimony regarding what caused her fall and the absence of a caution cone in the main restroom area, the Court is of the opinion that there remain genuine disputes of material fact as to Plaintiffs' negligence and loss of consortium claims.[8] These questions include, but are not necessarily limited to, whether Wal-Mart created the condition which caused Ms. Chambliss' fall and whether Wal-Mart fulfilled its duty to adequately warn Ms. Chambliss of this condition. Summary judgment is therefore inappropriate.

---

[8]Mr. Chambliss' loss of consortium claim is derivative of Ms. Chambliss' premises liability negligence claim. *See, e.g., Sharlow v. Raybourn*, 135 So. 3d 238, 244 (Miss. Ct. App. 2014) (citation omitted). If the underlying negligence claim is disposed of, then the loss of consortium claim cannot be maintained on its own. *See id.*

### III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  For the foregoing reasons, the Court will deny Wal-Mart's Motion to Strike and its Motion for Summary Judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Strike Affidavit of Frances Chambliss [50] and the Motion for Summary Judgment [38] filed by Defendant Wal-Mart Stores, Inc., are both **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 21st day of August, 2015.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE